IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

BRYAN FOSTER, )
)
Plaintiff, )
) Civil Action No.: 08 C 5398
v. )
) Suzanne B. Conlon, Judge
SAINT-GOBAIN CONTAINERS, INC., )
)
Defendant. )

## MEMORANDUM OPINION AND ORDER

Bryan Foster sues his former employer Saint-Gobain Containers, Inc. under 42 U.S.C. § 1981. Foster alleges Saint-Gobain Containers suspended and terminated him because he is African American, subjected him to a racially hostile work environment, and retaliated against him for reporting the discrimination. Saint-Gobain Containers moves for summary judgment. For the reasons set forth below, the motion is granted in part.

## BACKGROUND

The following facts are derived from the parties' Local Rule 56.1 statements and exhibits. Saint-Gobain Containers manufactures glass containers for the food and beverage industry. In June 2004, Foster began working as a machine operator at its Dolton, Illinois plant. Foster was promoted to a "backup upkeep" position in February 2007.

It is undisputed that Foster's co-worker Nick Lukianowich used the term "nigger" in conversations with Foster "countless" times. Pl. Facts ¶ 3. According to Foster, in September 2005, Lukianowich told Foster that "Hurricane Katrina did not kill enough niggers." Pl. Facts ¶

2. On December 22, 2006, Lukianowich told Foster that he was going to get fired "like that nigger Don Miles." Pl. Facts ¶ 4. Lukianowich disputes he made the comments. Def. Resp. ¶ 4.

An altercation between Foster and Lukianowich ensued, although the description of it is disputed. According to Foster, Lukianowich put garbage and glass at the front of Foster's machine, pointed Foster's high pressure hose at his face, and sprayed Foster's feet. Lukianowich testified Foster sprayed him with the hose and pushed him. Pl. Facts ¶ 4; Def. Resp. ¶ 4. It is undisputed that Foster complained to Paul Spanopoulos, the human resources manager, that day about Lukianowich's racial slurs. Pl. Facts ¶ 5.

Foster and Lukianowich subsequently submitted an agreement to Saint-Gobain Containers, Inc. that they had resolved their differences. Def. Ex. 1(B). Following an investigation, both Foster and Lukianowich were issued written warnings that future altercations would result in discipline, up to and including termination. Lukianowich's written warning included a warning that racial slurs would not be tolerated. Def. Exs. 1(C) and (D). According to Foster, after Spanopoulos met with Lukianowich, he told Foster: "Well, they told me not to call you a nigger anymore. I got to find something else to call you." Lukianowich disputes he said this. Pl. Facts ¶ 8; Def. Resp. ¶ 8. Foster complained to his union president about Lukianowich's further use of "nigger." Pl. Facts ¶ 8. Foster did not report the comment to Spanopoulos or anyone at Saint-Gobain Containers. Def. Resp. ¶ 8; Def. Facts ¶ 36; Pl. Resp. ¶ 36.

On April 20, 2007, co-worker Ted Hawthorne told Foster that if he had black daughters, he would call them "nappy headed hoes." Pl. Facts ¶ 13. Hawthorne has a confederate flag in his work locker. Pl. Facts ¶ 14. Foster complained to his union president about the comment.

2

Pl. Facts ¶ 13. Within a day or two, Saint-Gobain Containers posted a zero tolerance policy for racial slurs. Def. Facts ¶ 39.

From December 2007 through January 2008, other co-workers used the word "coon" with Foster. P. Facts ¶ 15. Foster did not report the comments to Spanopoulos or anyone at Saint-Gobain Containers. Def. Response ¶¶ 13 and 15; Def. Facts ¶¶ 38 and 41. Saint-Gobain Containers does not dispute that from 2005 to 2007, other African American employees complained of racial epithets. Pl. Facts ¶¶ 16, 18, 20, 22; Def. Resp. ¶¶ 16, 18, 20, 22.

In January 2008, Lukianowich told Foster, in the company parking lot, to "turn that nigger music down;" Lukianowich disputes making the statement. Pl. Facts ¶ 12; Def. Resp. ¶ 12. On February 13, 2008, Foster submitted a "pre-grievance" form stating "someone" told him to "turn that nigger music down." Pl. Facts ¶ 12; Pl. Ex. 31.

Prior to Foster's December 22, 2006 complaint about Lukianowich's racial slurs, he had been "written-up" twice; subsequently, he received ten "write-ups." Pl. Facts ¶ 31; Def. Response ¶ 31. In October 2007, Foster applied for but was not promoted to a "permanent upkeep" position. Pl. Ex. 42. Shortly before Thanksgiving 2008, Foster's shift earned a steak dinner as a production reward. But Foster was transferred for a week to a different shift, and did not receive the dinner. Pl. Facts ¶ 32. Foster filed his lawsuit on September 22, 2008.

On January 17, 2009, Foster requested permission from his supervisor Dan Shepherd to leave his shift early because he was feeling depressed and not well. Pl. Facts ¶ 36. After not receiving a response for about an hour, Foster asked Shepherd if Harold Turner could replace him. Shepherd said he had called a replacement and told Foster "you can complain about that." Pl. Facts ¶ 36. An altercation ensued; the surrounding facts are disputed. According to Foster,

3

when the replacement arrived, Shepherd ordered Foster to leave. Foster refused because he was more than half way through his shift and was feeling better. Shepherd demanded he leave and poked Foster in the chest three times. Foster pushed his hand away; Shepherd shoved Foster toward the machine. Foster "pushed Shepherd back by his throat." Pl. Facts ¶ 36. According to Shepherd, Foster poked his chest, pushed him, and knocked him to the ground with a punch. Shepherd ordered Foster to leave the plant, and filed criminal battery charges against Foster. Def. Resp. ¶ 36; Def. Ex. 2. Foster was suspended pending an investigation. At his suspension hearing, Foster demonstrated that he put his hands around Shepherd's neck, squeezed, and pushed him to the ground. Def. Facts ¶ 76. Foster was terminated on February 23, 2009.

## DISCUSSION

### I. Summary Judgment Standard

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The moving party has the initial burden of demonstrating that it is entitled to summary judgment. *Kramer v. Vill. of N. Fond du Lac*, 384 F.3d 856, 861 (7th Cir. 2004) (citing *Celotex Corp.*, 477 U.S. at 323). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Silk v. City of Chicago*, 194 F.3d 788, 798 (7th Cir. 1999). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the nonmoving party. *See Franzoni v. Hartmarx Corp.*, 300 F.3d 767, 771 (7th Cir. 2002). A genuine issue of

material fact exists when the evidence is sufficient to support a reasonable jury verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).

## II. Disparate Treatment

Saint-Gobain Containers argues it suspended and terminated Foster because he assaulted his supervisor, not because he is African American. Foster may prove a § 1981 racial discrimination claim either directly or indirectly. *Paul v. Theda Med. Ctr., Inc.*, 465 F.3d 790, 794 (7th Cir. 2006). Foster proceeds under both methods. Proof of discrimination under the direct method is not limited to an employer's admissions that it based its decisions on race. *Hasan v. Foley & Lardner LLP*, 552 F.3d 520, 527 (7th Cir. 2009). Direct evidence includes circumstantial evidence suggesting discrimination through a chain of inferences, such as behavior toward other employees in the protected group or suspicious timing of employment decisions. *Id.* The evidence must point directly to a discriminatory reason for the employer's actions. *Id.*

Foster argues Spanopoulos routinely imposed harsher discipline on African American employees than on other employees. He cites a physical fight between two employees involving profanity and racial slurs. The employee who used profanity and racial slurs was written up, but not suspended; the African American employee who used profanity only was written up and suspended. Pl. Facts ¶¶ 18-19. Foster also cites Spanopoulos' decision to issue a Caucasian supervisor a "last chance letter" in response to an African American employee's complaints that he repeatedly harassed and degraded her. Pl. Facts ¶¶ 20-21. But Foster does not provide any detail regarding the context of these two incidents. His reliance on the purported differential treatment is insufficient circumstantial evidence that Foster was terminated because he is African American. *Cf. Caskey v. Colgate-Palmolive Co.*, 535 F.3d 585, 593-94 (7th Cir. 2008) (vague

5

reference to pattern of terminating female employees who opposed sexual harassment and discrimination insufficient circumstantial evidence of retaliation).

Foster's argument assumes Spanopoulos made the decision to terminate him. Spanopoulos states he made the decision to suspend Foster pending investigation of the fight with Shepherd. Def. Ex. 1, Spanopoulos Aff. ¶ 30. But he testified Saint-Gobain Containers management and counsel made the ultimate decision to terminate Foster. Pl. Ex. 3, Spanopoulos Dep. Tr. at 276-77. Foster presents no genuine issue of material fact that Spanopoulos disciplined African American employees more harshly than other employees.

Foster argues the timing of his termination – two days before discovery in this case closed – is suspicious. He provides no evidentiary basis for this claim. Spanopoulos states Foster was terminated after the investigation concluded and criminal battery charged were filed against Foster. Spanopoulos Aff. ¶ 33. Foster does not rebut this evidence.

Foster argues he was immediately suspended following the Shepherd fight, but Shepherd was not. This provided Shepherd a better opportunity to present his version of the fight. Foster provides no evidentiary basis for this claim. Spanopoulos states he immediately suspended Foster, with pay, pending the investigation because of the seriousness of Shepherd's allegations and Spanopoulos' belief the allegations were true. Spanopoulos Aff. ¶ 30. Foster presents no evidence this decision was based on race. The decision to suspend Foster is precisely the kind of business decision over which a court does not act as a "super-personnel department." *Ptasznik v. St. Joseph Hosp.*, 464 F.3d 691, 697 (7th Cir. 2006). Foster fails to present direct evidence that he was suspended and terminated because of his race.

Under the indirect burden-shifting method of proof, Foster must establish a *prima facie* case of discrimination by proving that he is a member of a protected class; his job performance met Saint-Gobain Containers' legitimate expectations; he suffered an adverse employment action; and a similarly situated employee outside of his protected class was treated more favorably. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973); *Paul*, 465 F.3d at 794.

If Foster demonstrates a *prima facie* case, the burden shifts to Saint-Gobain Containers to articulate a legitimate, nondiscriminatory reason for suspending and firing him. *McDonnell Douglas*, 411 U.S. at 802-03; *Paul*, 465 F.3d at 794. If Saint-Gobain Containers satisfies this burden of production, Foster must establish there is a genuine issue of material fact as to whether Saint-Gobain Containers' reason is merely a pretext for unlawful discrimination in order to survive summary judgment. *McDonnell Douglas*, 411 U.S. at 804; *Paul*, 465 F.3d at 794.

Foster fails to establish a *prima facie* case because he does not present evidence that a similarly situated employee outside his protected class was treated more favorably. He argues this evidence is not required; he must only demonstrate that circumstances suggest his suspension and termination were motivated by race, citing *Timmons v. General Motors Corp.*, 469 F.3d 1122 (7th Cir. 2006). In *Timmons*, the Seventh Circuit recognized in a disability discrimination case that an employee may not be able to identify similarly situated employees. In that situation, the fourth prong requires a showing that the circumstances surrounding the adverse employment action indicate that it is more likely than not that membership in a protected class was the basis. *Id.* at 1126-27. But Foster relies on the same evidence he presents as direct evidence – Spanopoulos' purported pattern of disciplining African American employees more harshly than

7

other employees and the timing of his suspension and termination – to support his argument that race was the reason for his suspension and termination. He fails to establish a *prima facie* case of discrimination. Saint-Gobain Containers is entitled to summary judgment on Foster's disparate treatment claim.

## III. Hostile Work Environment

To prove a hostile work environment claim, Foster must establish he was subjected to unwelcome harassment; the harassment was based on his race; the harassment was severe or pervasive enough to alter the conditions of his employment and create a hostile and abusive work environment; and there is a basis for employer liability. *Andonissamy v. Hewlett-Packard Co.*, 547 F.3d 841, 847 (7th Cir. 2008). Saint-Gobain Containers does not dispute the alleged co-worker harassment was unwelcome or based on Foster's race. It argues the harassment was not severe or pervasive, and that it is not liable for the alleged harassment by Foster's co-workers.

Harassment must be subjectively and objectively offensive. *Lapka v. Chertoff*, 517 F.3d 974, 983 (7th Cir. 2008). Saint-Gobain Containers argues Foster does not establish he was offended by Lukianowich's use of the term "nigger." Lukianowich testified that both he and Foster routinely used the word in conversation; it was not intended to be derogatory or racist. Foster complained about Lukianowich's use of the word only after their December 22, 2006 altercation. Pl. Ex. 2, Lukianowich Dep Tr. at 41-42, 47-48. Foster disputes this, and states he was offended when Lukianowich called him "nigger" but felt he "had to deal with it" to keep his job. Pl. Ex. 4, Foster Aff. ¶ 5. Lukianowich's comments extended beyond mere use of the word; he purportedly told Foster "Hurricane Katrina did not kill enough niggers;" that Foster was going to get fired "like that nigger Don Miles;" and to "turn that nigger music down." Lukianowich

8

disputes making these comments, but the evidence must be construed in Foster's favor. Foster testified about insulting comments from other co-workers, including use of the word "coon" and the phrase "nappy headed hoes." There is a genuine issue of material fact whether offensive and harassing comments were made.

Saint-Gobain Containers argues Lukianowich's use of the word "nigger" is not objectively offensive because it was isolated, and not motivated by racial animus. This argument does not address the other comments. Lukianowich admits he called Foster a "nigger" "countless" times. Lukianowich Dep. Tr. at 42. There is no magic number of slurs that establish a hostile work environment. *Cerros v. Steel Technologies, Inc.*, 288 F.3d 1040, 1047 (7th Cir. 2002). A sufficiently severe episode of harassment may occur only once, while a pattern of lesser harassment that extends over a long period of time may constitute a hostile work environment. *Id.* An unambiguously racial epithet falls on the more severe end of the spectrum. *Id.* Indeed, in *Rodgers v. Western-Southern Life Ins. Co.*, 12 F.3d 668, 675 (7th Cir. 1993), the Seventh Circuit stated no single act can more quickly create an abusive working environment than use of the unambiguously racial epithet "nigger" by a supervisor. Viewing the evidence in the light most favorable to Foster and drawing all inferences in his favor, he presents sufficient evidence of objectively offensive racial harassment.

Saint-Gobain Containers argues there is no basis to hold it liable for the comments of Foster's co-workers. In a hostile work environment case, an employer that has been apprised of employee harassment may avoid liability if it takes prompt and appropriate corrective action reasonably likely to prevent harassment from recurring. *Hrobowski v. Worthington Steel Co.*,

358 F.3d 473, 478 (7th Cir. 2004); *Tutman v. WBBM-TV, Inc./CBS, Inc.*, 209 F.3d 1044, 1048 (7th Cir. 2000).

Saint-Gobain Containers argues that Foster only complained once – in December 2006, and merely reported Lukianowich's use of the word "nigger." Lukianowich was issued a written warning. Foster reported to the union president Lukianowich's comment "they told me not to call you a nigger anymore[;] I got to find something else to call you" and Hawthorne's statement about "nappy headed hoes." Saint-Gobain Containers argues Foster did not *report* the comments, not that it was *unaware* of the comments. Indeed, Saint-Gobain Containers argues it posted a zero tolerance policy for racial slurs within a day or two after Foster's complaint about Hawthorne to the union president. Def. Facts ¶ 39. It is undisputed that Foster submitted a "pre-grievance" regarding a direction to him to keep his "nigger music down." During the same time period, several other African American employees complained about racial epithets in the workplace. Viewing the evidence in Foster's favor, and drawing reasonable inferences in his favor, there is a genuine issue of material fact whether Saint-Gobain Containers was aware of Foster's additional claims of racial harassment.

It is also undisputed that Saint-Gobain Containers' racial harassment policy does not provide procedures to report racial harassment. Pl. Ex. 18. The policy is labeled "sexual harassment policy and procedure;" it contains examples of sexual harassment, but no examples of racial harassment. *Id.* There are genuine issues of material fact regarding the sufficiency of Saint-Gobain Containers' response to the alleged racial harassment. Under these circumstances, the mere written reprimand to Lukianowich in response to Foster's December 2006 complaint

does not entitle Saint-Gobain Containers to summary judgment on the hostile work environment claim.

## IV. Retaliation

Foster argues Saint-Gobain Containers retaliated against him for complaining about racial harassment by unreasonably reprimanding him, depriving him the steak dinner he earned for high production, and failing to promote him. Foster may prove a retaliation claim either directly or indirectly. *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 404 (7th Cir. 2007), *aff'd* 128 S. Ct. 1951 (2008). He proceeds under the direct method. To establish retaliation, he must show he engaged in statutorily protected activity, suffered a materially adverse employment action, and there is a causal connection between the protected activity and adverse action. *Id.* Saint-Gobain Containers disputes the causal connection element.

Foster received ten disciplinary actions between January 2007 and January 2009. He does not provide any evidence the discipline was unwarranted. He presents no genuine issue of material fact that the discipline was caused by his complaints. He did not receive the steak dinner because he was transferred to another shift during the week of the dinner. Even assuming this was a *material* adverse employment action, Saint-Gobain Containers states the transfer resulted from its regular practice of "shift balancing." Employees are transferred to different shifts to maintain a balance of experienced and inexperienced workers with appropriate job functions. Def. Facts ¶¶ 66-69. Foster does not provide evidence to refute that the transfer was because of shift balancing.

Foster was not promoted to the "permanent upkeep" position for which he applied in October 2007. Eddie Recio was awarded the position. Under Foster's collective bargaining

11

agreement, positions are awarded based on seniority. Def. Ex. 1(A). Foster states he should have been awarded the promotion because he held the "back-up upkeep" position seven months longer than Recio. Pl. Exs. 45, 46, and 46A. Saint-Gobain Containers argues Recio nevertheless had more *seniority* than Foster. But it does not present supporting evidence. Viewing the evidence in the light most favorable to Foster, and drawing all inference in his favor, he presents a genuine issue of material fact whether the failure to promote him was caused by his racial harassment complaints.

## CONCLUSION

Saint-Gobain Containers' summary judgment motion is granted on the disparate treatment claim because Foster fails to present direct evidence that he was suspended and terminated because of his race, and he fails to establish a *prima facie* case of discrimination. Summary judgment is denied on the hostile work environment claim because there is a genuine issue of material fact whether offensive racial harassment occurred, and there are genuine issues of material fact regarding the sufficiency of Saint-Gobain Containers' response to the alleged racial harassment.

Saint-Gobain Containers is entitled to summary judgment on the retaliation claims for unreasonable reprimands and deprivation of the steak dinner because Foster presents no genuine issue of material fact that the actions were caused by his complaints. Summary judgment is denied on the retaliation claim for failure to promote because Foster presents a genuine issue of material fact whether his complaints caused denial of a promotion.

ENTER:

*Suzanne B. Conlon* (signature)

Suzanne B. Conlon
United States District Judge

June 19, 2009